Case number 171721 United States v. Linroth-Cezaire Good morning, Your Honor. Good morning. I would like to reserve two minutes, if I may. You may. Thank you. Judge Thompson, and may it please the Court. I'm sorry, I don't think you've introduced yourself. I apologize. I was ready to get right into the argument. Don't blame me. Thank you. My name is Jim Falvey, and I represent Appellant Linroth-Cezaire. So this case presents a question whether Cezaire received an impartial jury during her trial where she requested voir dire on race and ethnicity. She is a black Haitian American. And in this case, Cezaire's trial counsel asked Judge O'Toole if he would ask some question about race. I mean, you concede that in his written request for instructions, that wasn't there. That is correct. And you also concede that when the judge said no to the specific, we're going to do it through the more generic form of, does anybody have any reason why the attorney said thank you? Right. Yes, that was at the beginning, and I would suggest that that was an attorney being polite. It's not uncommon to see counsel when you lose emotion or something to say, okay, thank you, and move on. I don't. Well, I usually say thank you. Please note my objection. Well, yes, but I would suggest that Cezaire's counsel did make an objection or a request for voir dire that is sufficient to be able to raise the issue on appeal. She didn't waive it, and the trial court was certainly able to understand what she was asking for, which based on a couple of the cases that I cite, albeit from the 11th Circuit, state that that is sufficient as long as the trial court is able to understand what the request is. Okay? Go ahead. Thank you. So as you noted, the trial court refused to grant voir dire. Even that's not clear to me. As I read the record, trial counsel says, I'm wondering if the court, I didn't ask for this, but I'm wondering if the court would give that kind of instruction. Instead of saying the no, the court says I don't see anything in this case that would make it necessary, and counsel just says it's not that kind of case given the current climate, and the judge ultimately says, well, I'll give the general one, and then let's see. So the judge expressly left it open. We'd go in, and this is what judges often do. We'll do the voir dire. We'll get a sense for the room. We'll see how the questions, we'll see how my general one answered. We'll see what that, and I'm not, I don't see any denial here. He didn't ask the question, but he said let's see, and then after the see, there's no request for the instruction. Right. I think that was his decision right there that he wasn't going to do it. At that moment. At that moment, correct. But didn't he leave it open? I don't think he did. What did he mean by let's see? I think it was a comment, a throwaway comment at that time to move beyond that particular issue. I don't believe that even if it was raised later in the case that he would have allowed raised face voir dire, and actually we're not asking for individualized raised face voir dire, as in Parker and Casanova, both cases. I know that the panel was on one or both of those cases where there was individual voir dire requested. We're simply seeking a general voir dire question on race, not the generalized question that the judge offered, which a number of cases, in fact, even I think it's Murray or Trudy Murray in the Supreme Court, they had requested that the court did not want to ask the question in a more specific way, but the court held that it was proper to ask an individualized, I'm sorry, a generalized question in that decision. So how is race so inextricably bound to the facts of this case? Well, it may not be, and as you know, there are two standards for the court to consider. There's the constitutional standard and the supervisory powers standard. Under the supervisory powers standard, a court needs to, the test is whether there's a reasonable possibility that race will essentially infect the jury. Well, what's the reasonable possibility if you want to start with supervisory? Sure. I think trial counsel made that clear at the beginning of her argument that the current climate in the United States at that time, President Trump was just elected, there was an enhanced focus on race and ethnicity at that time, and I believe with Ms. Cesar being a black Haitian American, that was important for the court to explore. So you're saying that because of the climate, which is ongoing, that we're supposed to presume in every case involving a minority that the jury was possibly tainted? You know, there are cases that say just because a defendant is an African American or otherwise a minority that they need not see, that the court does not have to give them, have voir dire on race just because you're a minority. However, in this case, there was a lot of testimony and witnesses from Haiti and about Haitian customs. In particular, there's a concept of an SOL or a SOL whereby it's sort of a bank, it's a private family bank saving mechanism that is part of the Haitian culture that came up. Wasn't the principal witness against the defendant also Haitian? Yes, Ms. Lubin, that is correct. So it was nothing ever mentioned to the judge tying the whole notion of the SOL into jury selection, though, ahead of time? Correct. That was never argued? Correct. The trial counsel did not raise that issue. That is right. But what is it about just the structure of a SOL? Are you saying that just because it's something in Haitian culture that would cause a juror to be biased? I'm simply pointing out, Judge Thompson, that there was substantial testimony about Haitian culture and there were individuals from Haiti who testified. But what is it about all of that that would cause a juror to be prejudiced? Well, it reinforces the fact that the defendant is Haitian and that if you are biased, it hits you in the face, aside from the fact, in addition to the fact that the defendant is from Haiti, and it's that extra layer that's needed above and beyond the defendant just being from Haiti. Thank you. So I'll stop at that point. May it please the Court, my name is Robert Richardson and I represent the United States on this appeal. Your Honors, I think there are two bases on which the Court could and should affirm the conviction. The first is I do think that this issue was not only forfeited but actually was waived below. And the reason I say that is just right from the get-go, trial counsel was not arguing that this was something that was legally required. It was something she hadn't put into the written requests and it was coming up at the last minute. She didn't say, geez, I really messed up. This is something that is constitutionally required or required under your supervisory powers. Rather, it was asking whether the Court would consider giving a race question and she was wondering if the Court would give that type of instruction. As Your Honor pointed out, Judge O'Toole responded by saying I don't see anything in the case that would make it necessary. It's not that kind. And then counsel broke in and affirmatively said it is not that kind of case. So I think the judge was being told, I think trial counsel by her own words, made it clear she didn't think that this was something that was legally required but something that she was just requesting. I believe she said out of an abundance of caution or to err on the side of caution or words to that effect. That's when the Court said, as Your Honor pointed out, that he was going to answer a question that he thinks would cause jurors who would respond positively to a question on racial prejudice to respond to one of his other questions. And counsel said, okay. And he said, so let's see. And counsel said, thank you. And it's great to be polite, but at no point either then or later on after counsel had heard the sort of catch-all that was asked at the end of the case did counsel object. And she's a very capable lawyer. She knows how to object. I was reading parts of the transcript at the beginning of her client's testimony. There was an issue where the judge ruled in our favor on a motion to eliminate. We were at the sidebar, and she said no to my objection. So she knows how to object. I simply think that this was a pretty clear case of waiver, and at best it's forfeited and renewed for plain error. And the second basis on which I think that the Court should affirm the conviction is that I think Gellin really controls this decision, even assuming you get beyond the waiver issue, because Gellin is a case that was really almost eerily similar to this case, including, as counsel pointed out in his reply brief, the identity of the district court judge. But it involved a request of a Haitian-American defendant for a question on ethnicity and country of origin. The Court, similar to here, said he didn't see a reason that it would be needed. In that case, there actually was a witness who had shown some animosity towards Haitians. This Court ultimately concluded that even given that, the judge had not erred in declining to give the question requested, either under the Constitution or under the Court's supervisory powers, essentially following Rosales-Lopez. So I would argue that based on both of those, both on waiver and on the fact that it has no validity on the merits, the Court should affirm the conviction. Unless there are any questions, I will rest on the brief. Thank you. Thank you, Nermis. Next. Really quick on the Gelling case, and I do acknowledge in the reply brief that that is a challenging case for our position, but I would point out the following. That was a 2013 case, and I go into detail on the brief on this. There have been more current decisions analyzing the race-based voir dire question, including Parker and Casanova. In Casanova, I should point out that the trial judge asked defense counsel, do you want race-based voir dire? And then they took it up on appeal. So in that case, the trial court actually took the step to bring forward race-based voir dire. The other quick point about Gelling that I want to make, aside from the fact that Parker and Casanova seem to accept the concept of having a race-based voir dire, not individualized, but in the aggregate of the jury. But in Gelling, there's an interesting couple of paragraphs quoting Judge O'Toole about how he thinks the country essentially is beyond racism anymore. And that seems to be what he is basing the decision on. Well, if counsel below in this case had said, look, Your Honor, you need to ask the question, race is always lurking there, and we should at least find out, and I'm objecting to your not doing that, then we would have arguably a different case to address these issues. But I think I keep coming back to the trial counsel didn't come close to that. Indeed, even on your appeal, you're arguing supervisory. Yes, Your Honor. May I respond to that? Yes. So again, it was, I would submit that what trial counsel did, far from perfect, was enough such that the court was put on notice and really quick on the court, sorry, on counsel saying, okay, and, you know, again, I would say that's a response that's not uncommon. Win or lose a motion, it's part of a conversation. Okay, I see. I understand what your view is. And with that, we request that the matter be reversed and amended. Thank you very much.